**Vicki COLE**

v.

**Joseph ALTIERI, Jr. and Martha Altieri, his wife, t/a Frost Hollow Riding Stables and Frost Hollow Stables, Inc.**

Civ. A. No. 78–2131.

United States District Court, E. D. Pennsylvania.

Dec. 30, 1981.

**166**

Martin Cohen, John Robert Vivian, Easton, Pa., for plaintiff.

Herbert Toff, Easton, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

At the conclusion of four days of testimony a jury awarded plaintiff, Vicki Cole, $9,000 for injuries which she sustained when a horse suddenly tore away from a hitching post at defendant, Joseph Altieri's, riding stable. Defendant now seeks a reduction in the jury award and asserts that the release for $7,500 which extinguished the liability of his former wife, Martha Altieri, should offset the award returned against him. *See* Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S.A. § 8321 *et seq.* Plaintiff, resisting this motion, contemporaneously argues that the judgment should be augmented to include damages for delay. *See* Pa.R.Civ.P. 238. Applying Pennsylvania law in this diversity suit, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we hold that a reduction in the verdict is not warranted and that damages for delay are due.

The Uniform Contribution Among Tortfeasors Act provides:

§ 8327. Liability to make contribution as affected by release

A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another tort-feasor, unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued and provides for

a reduction to the extent of the pro rata share of the released tort-feasor of the injured person's damages recoverable against all the other tort-feasors.

and

§ 8326. Effect of release as to other tort-feasors

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount, or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

Joseph Altieri contends that the release for $7,500 which his wife executed operates, pursuant to the above statute, to reduce the $9,000 verdict returned against him. Consequently, he urges that he is properly liable to plaintiff only in the amount of $1,500. Plaintiff counters that in order to claim the benefit of the statute and effect a reduction in the verdict, defendant, Joseph Altieri, must prove that his wife's negligence was either "judicially determined" or that the release, and the circumstances accompanying its execution, evidence an intent to waive such a determination.

■ *Davis v. Miller*, 385 Pa. 348, 351–52, 123 A.2d 422 (1956) held that in order to give effect to the "pro rata share" clause in a release, the status of the settling party must be "judicially determined". *See also, Griffin v. United States*, 500 F.2d 1059, 1071 (3d Cir. 1974). The parties do not dispute that, pursuant to their agreement, Martha Altieri's alleged negligence was never raised before, or submitted to, the jury. This agreement, reached prior to trial and approved by the Court, is binding on counsel. *Cf. Price v. Inland Oil Co.*, 646 F.2d 90, 96 (3d Cir. 1981) (counsel are bound by their pre-trial representations to the Court). As such, Martha Altieri's individual and/or joint negligence has never been "judicially determined". Therefore, the contingent provisions of the release, embodied in the

fourth paragraph thereof and providing for specified occurrences based upon an adjudication of Martha Altieri's negligence, are not called into play. Hence, defendant cannot look to *Davis* for authority that the verdict should be reduced.

■■ Where there is no "judicial determination" of negligence but the wording of the release is "unambiguous" and "concede[s] the joint tortfeasor status" of the settling defendant, the non-settling defendant is entitled to a reduction of the verdict returned against him. *Griffin v. United States*, 500 F.2d at 1072. *Accord, Rensi v. Langston*, 499 F.Supp. 720, 725–26 (W.D.Pa. 1980) (Provision in release that it shall operate as a "reduction of the total damages recoverable against all the other tort-feasors" is such an unambiguous declaration and effects a reduction). Finally, verdicts are properly reduced where the released tortfeasor's liability is the product of "plaintiff's concession", i.e., that the circumstances attendant to the release show that plaintiff considered the released party a joint tortfeasor. *Mazer v. Security Insurance Group*, 507 F.2d 1338, 1342 (3d Cir. 1975) (*en banc*).

Consequently, the standard which we apply to the issue at bar is that Joseph Altieri is entitled to a reduction only if he can show that the subject release *concedes* liability by calling for a reduction in recoveries against him or if the circumstances surrounding the execution of the release "clear[ly]" show that the released party was a joint tortfeasor. *Rutherford v. Gray Lines, Inc.*, 615 F.2d 944, 948, n. 11 (2nd Cir. 1981) (applying Pennsylvania law). *See also, Young v. Verson Allsteel Press Co.*, 524 F.Supp. 1147 (E.D.Pa.1981).

■ The release at issue does not concede Martha Altieri's liability and does not call for a verdict reduction. Rather, it evidences an intent to make claims against Joseph Altieri and to assert that he is *solely* liable for plaintiff's injuries. For example, the second paragraph of the release provides that plaintiff

reserve[s] the right to make claim against any and every person and company . . . and reserves also the right to make claim *that they, and not said Payer,* [Martha Altieri], *are solely liable* to me for my injuries, losses and damages. (emphasis added).

There being no judicial determination or concession of Martha Altieri's negligence, Joseph Altieri is not entitled to a reduction in the verdict. Additionally, Joseph Altieri has failed to adduce any facts to support the allegation that the circumstances surrounding the execution of the release clearly show the joint tortfeasor status of Martha Altieri.

 We also deny defendant's motion for failure to comply with Fed.R.Civ.P. 59(e) which requires that motions to amend judgments "shall be served not later than 10 days after entry of the judgment". In the case at bar, judgment was entered on September 21, 1981, the instant motion was served one month thereafter, on October 20, 1981. The time limits dictated by Fed.R. Civ.P. 59(e) are "*mandatory* and may not be extended by the trial court", *Parks v. "Mr. Ford"*, 68 F.R.D. 305, 307 (E.D.Pa.1975). Failure to comply with the rule renders the motion "untimely" and "on that basis" compels the denial of the motion. *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185, 1192 (3d Cir. 1979). Hence, we deny defendant's motion to reduce the verdict.

We now turn to plaintiff's motion to augment the verdict pursuant to Pa.R.Civ.P. 238 (Rule 238).

 In *Renner v. Lichtenwalner*, 513 F.Supp. 271 (E.D.Pa.1981), we held that Pa. R.Civ.P. 238 (Rule 238), providing damages for delay, applies to diversity cases brought in federal court. Other courts have since agreed with that conclusion, *Weissinger v. Consolidated Rail Corp.*, No. 78–2914 (E.D.Pa. August 7, 1981); *Bullins v. City of Philadelphia*, 516 F.Supp. 728 (E.D.Pa.1981), thereby rejecting the holding of *Jarvis v. Johnson*, 491 F.Supp. 389 (W.D.Pa.1980). The Pennsylvania Supreme Court recently held that it properly promulgated Rule 238 pursuant to its constitutional power to establish *procedural* rules. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981). In so doing, the court considered the procedural/substantive distinction in a manner similar to the analysis employed by Chief Judge Lord who observed that

whether Rule 238 is procedural or substantive for the purpose of determining the Pennsylvania Supreme Court's power to issue the rule under the Pennsylvania constitution . . . does not provide the answer to the question of whether the rule is bound up with the definition of the substantive rights of the parties needed for an *Erie* determination.

*Bullins v. City of Philadelphia*, 516 F.Supp. at 730. The *Laudenberger* court, quoting a noted legal scholar opined that the distinction between substance and procedure can be made

only in the light of the purposes in view, it cannot be assumed without discussion that as our purposes change the line can be drawn at precisely the same point.

496 Pa. at 58, 436 A.2d at 150. Continuing, the court stated that whether Rule 238 is procedural or substantive for diversity purposes is a "separate and distinct concern" from the question of whether it is procedural or substantive for the purpose of determining the power of Pennsylvania's Supreme Court to promulgate the rule. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. at 62, 436 A.2d at 153. Carefully limiting the scope of its holding to the latter issue, the court apparently approved of the application of Rule 238 in diversity cases in order to fulfill the *Erie* mandate of ending discrimination between citizens and non-citizens and discouragement of forum shopping. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. at 62, 436 A.2d at 153.

 Plaintiff's motion for damages for delay is premised on defendant's failure to make a written settlement offer prior to trial. *See* Rule 238(e). Defendant opposes this motion and initially argues correctly

that since this action was pending on the date that the rule took effect, April 15, 1979, that damages cannot begin to accrue until six months thereafter. *See* Rule 238(f). Defendant then erroneously reasons that since a federal arbitration panel heard the claim eight days prior to the expiration of the six-month period and that it, defendant, prevailed at that stage, that its "reliance" upon the award in refusing to make a *bona fide* settlement offer was justified. We disagree.

Initially, we note that the six-month period during which damages for delay could not accrue in this case began running on April 15, 1979, and ended on October 15, not November 15, 1979, as defendant contends. Hence, defendant's assertion that the arbitration, held on November 7, 1979, was *before* delay damages accrued is *factually* inaccurate. The *legal* conclusion that he properly "relied" on the arbitration award of November 7, 1979 is similarly flawed and cannot form the predicate of a defense to a Rule 238 claim since those damages already were accruing as of that date.

Moreover, defendant's theory of reliance on an arbitration award as a bar to Rule 238 damages fails since sections (a) and (b) thereof specifically provide for damages for delay notwithstanding a prior arbitration.

Finally, Local R.Civ.P. 8(7)(b) provides in relevant part that when a *de novo* trial is demanded after an arbitration, as was the case here, "the action shall be . . . treated for all purposes as if it had not been referred to arbitration". (emphasis added). *See, Bank Building & Equipment Corp. v. Mack Local 677 Federal Credit Union,* 87 F.R.D. 553 (E.D.Pa.1980). Accordingly, defendant's attempt to interpose the federal arbitration as a substantive defense to the increased liability imposed by Rule 238 fails because it would undermine the *Erie Railroad Co. v. Tompkins, supra,* and *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) requirements that plaintiffs in diversity cases be accorded the same right to relief in federal court as they would obtain in state court. *Renner v. Lichtenwalner,* 513 F.Supp. at 273.

An appropriate order will issue denying defendant's motion to reduce the verdict and granting plaintiff's motion for damages for delay.

## APPENDIX

KNOW ALL MEN BY THESE PRESENTS:

That for and in consideration of the payment to me of Seven Thousand and 00/100 [sic] ($7,500.00) Dollars to be paid by Martha Altieri, and other valuable consideration, I, realizing that there is doubt and uncertainty as to the nature and extent of my injuries, losses, and damages and as to the liability of the Payer, hereinafter described, and that such facts are also in dispute, I, being of lawful age, have released and discharged, and by these presents do for myself, my heirs, executors, administrators, and assigns, release, acquit, and forever discharge Martha Altieri and/or her master, servants, agents, and officers (any and all of whom are herein referred to as the Payer), their heirs, representatives, successors, and assigns from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, and all consequential damage and also to the extent of their liability for contribution to other joint tortfeasors arising out of or in any way growing out of any and all known and unknown personal injuries and death or property damage resulting or to result from an accident that occurred on or about the 21st day of August, 1976, at or near Frost Hollow Stables, Forks Township, Northampton County, Pennsylvania.

I reserve the right to make claim against any and every other person and company, including but not limited to Joseph Altieri, Jr., and Frost Hollow Stables, Inc., or any other possible Defendant and reserve also the right to make claim that they, and not said Payer, are solely liable to me for my injuries, losses, and damages.

In the event that other tortfeasors are responsible to me for damages as a result of this accident, the execution of this release

shall operate as a satisfaction of my claim against such other parties to the extent of the relative pro rata share of common liability of the Payer herein released.

If it should appear or be adjudicated in any suit, action, or proceeding, however, that said Payer and others were guilty of joint negligence which caused my injuries, losses or damages, in order to save said Payer harmless, I, as further consideration for said payment, will satisfy and decree, judgment, or award in which there is such finding or adjudication involving said Payer on their behalf and to the extent of their liability for contribution, if it is held there is any liability for contribution; also, I will indemnify and save forever harmless said Payer against loss or damage because of

any and all further claims, demands, or actions made by others on account of or in any manner resulting from said injuries, losses, and damages.

This special release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

I further state that I have carefully read the foregoing release and know the contents thereof, and I sign the same as my own free act.

IN WITNESS WHEREOF, I have hereunto set my hand this 14th day of July, 1981.

In the presence of

CAUTION: READ BEFORE SIGNING

S/ M. Cohen

S/ Vicki Cole